1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9
AT TACOMA

10
CHRISTOPHER A. FERGUSON,

11
                  Plaintiff,

CASE NO. 13-cv-05441 BHS

12
      v.

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

13
CAROLYN W. COLVIN, Acting
Commissioner of the Social Security

Noting Date: May 30, 2014

14
Administration,

15
                  Defendant.

16

17
     This matter has been referred to United States Magistrate Judge J. Richard

18
Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19
4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20
271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 15, 16, 17).

21
     After considering and reviewing the record, the Court finds that the ALJ's duty to

22
supplement the record further regarding plaintiff's memory complaints was not triggered

23

24
by the consultative examination report of a licensed psychologist who completed memory

testing and found no impairment because the findings of this qualified examiner were not ambiguous and the record was adequate to allow for proper evaluation of the evidence. Furthermore, the ALJ's rejection of the testimony of plaintiff's mother and girlfriend due to inconsistencies with the medical evidence was supported by substantial evidence in the record.

Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, CHRISTOPHER A. FERGUSON, was born in 1983 and was 22 years old on the alleged date of disability onset of January 1, 2006 (*see* Tr. 139). Plaintiff did not graduate from high school and doesn't remember why he left school (Tr. 48-49). Plaintiff has worked as an assistant manager of a tool manufacturing company, dishwasher, roofer, salad maker and telemarketer (Tr. 157).

At the time of the hearing, plaintiff was living with his mother and uncle in a home that once belonged to his grandparents (Tr. 34, 35-36).

Plaintiff has at least the severe impairments of "seizure disorder status post traumatic brain injury, possible hearing loss on the left, a right shoulder disorder, disruptive disorder NOS, and cannabis dependence (20 CFR 416.920(c))" (Tr. 16).

PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on November 16, 2008 (*see* Tr. 132-38).  This application was denied and plaintiff did not appeal that

decision.  Plaintiff filed a second application for SSI on October 26, 2009 (Tr. 139-45). The application was denied initially and following reconsideration (Tr. 70-73, 80-82). Plaintiff's requested hearing was held before Administrative Law Judge Wayne N. Araki ("the ALJ") on June 15, 2011 (*see* Tr. 31-62). On November 22, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.11-30).

On April 25, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-7). *See* 20 C.F.R. § 416.1481. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on August 16, 2013 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ erred in failing to fully develop the record when plaintiff was not sent to a source qualified to evaluate the residual effects of his brain injury; and (2) Whether the ALJ erred in rejecting the lay witness statements because of secondary gain motivation (*see* ECF No. 15, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)      Did the ALJ err in failing to develop the fully record when plaintiff was not sent to a source qualified to evaluate the residual effects of his brain injury as ordered following the hearing?**

Based on plaintiff's presentation at the administrative hearing, the ALJ requested that a consultative psychological examination ("CE") with memory testing be completed to determine the residuals of plaintiff's head injury (Tr. 21-22, 50, 895-903).  This examination was conducted by Christina H. Rasmussen, Ph.D., a licensed psychologist (Tr. 895-903).  Because Dr. Rasmussen concluded that memory testing showed plaintiff had no significant memory difficulties, despite other evidence that showed deficits in short-term memory (see Tr. 878), plaintiff argues that the ALJ erred by not referring him to a second CE by a qualified specialist, such as a neuropsycholgoist.  Dkt. No. 15, p. 8, 12.

A.  <u>Whether Dr. Rasmussen was a qualified CE source</u>

In making the argument that Dr. Rasmussen was not qualified to assess the residuals of plaintiff's brain injury, plaintiff cites to the Administration's Program Operations Manual Systems ("POMS") regarding the selection a qualified medical source to perform a CE.  Dkt. No. 15, p. 10 (*citing* POMS DI 22510.010(C)(1) available at: https://secure.ssa.gov/poms.nsf/lnx/0422510010).  This section of the POMS reads:

> **C. Choose the appropriate CE source based on the information needed**
> The CE source must have the training and experience needed to perform the examinations(s) and test(s) requested.

**1. Need for a specialist**
Generally, a qualified CE source does not have to be a specialist in the medical field relevant to the claimant's impairment(s) to perform a CE.  For example, a qualified internist may perform a CE involving impairments of the musculoskeletal, cardiovascular, neurological, and other body systems.  **EXCEPTION**: If you need a specialist examination or test because of the nature or complexity of a particular impairment(s), select the appropriate specialist to perform the CE.

*Id.*  (citations omitted).  Plaintiff points to the exception to the general rule that a qualified CE does not have to be a specialist in the medical field relevant to a claimant's impairment and asserts that the nature of plaintiff's brain injury added to the complexity of evaluating its impact on his functioning and, for this reason, a specialist CE was needed.  Dkt. No. 15, p. 10.

In the alternate, plaintiff argues that even if a specialist CE was not required, based on the POMS, Dr. Rasmussen was not a qualified CE source because she did not have the necessary training or experience to evaluate the residual effects of plaintiff's brain injury.  Dkt. No. 15, p. 10 (*citing* POMS DI 22510.001(A)(5) available at: https://secure.ssa.gov/apps10/poms.nsf/lnx/0422510001).  POMS DI 22510.001(A)(5) reads:

**5. Qualified CE Source**
A qualified CE source is a medical source who:
- Is currently licensed (or certified in the case of a psychologist, or otherwise qualified in the case of a speech-language pathologist) in the State in which he or she performs the CE.
- Has the training and experience to perform the type of examination or test requested; and
- Is not barred from participation in Medicare or Medicaid programs or any other Federal or federally assisted programs.

*Id.*  In support of his argument that Dr. Rasmussen did not have the necessary training and experience, plaintiff cites to Dr. Rasmussen's private practice website that advertises Dr. Rasmussen's services treating mental health issues.  Dkt. No. 15, p. 10-11 (citing http://www.drchristinarasmussen.com/index.html (last visited by plaintiff on October 17, 2013)).  Plaintiff argues that because he does not have a mental health issue, Dr. Rasmussen lacked the qualifications to evaluate his impairment.  Dkt. No. 15, p. 11. Moreover, plaintiff contends that Dr. Rasmussen failed to consider the impact of plaintiff's brain injury when forming her opinion regarding plaintiff's functional limitations.  Dkt. No. 15, p. 11-12.

Plaintiff's assertions are not persuasive.  The POMS represent the Administration's internal operating policies.  While it is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority."  *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).  This Court does not find any valid reason for not following the general rule stated in the POMS that a qualified CE does not have to be a specialist in the medical field relevant to the claimant's impairment.  *See* POMS DI 22510.010(C)(1) available at: https://secure.ssa.gov/poms.nsf/lnx/0422510010.  This general rule is persuasive and it is consistent with 20 CFR pt. 404, subpt P, app. 1 ("the Listings"), neurological Listing 11.18, which concerns the evaluation of brain injuries.  When appropriate, Listing 11.18 directs that brain injuries be evaluated under Listing 12.02 for organic mental disorders.

For purposes of evaluating a disability claim, the Administration considers both the physical and the mental impairments that may be caused by a brain injury.  The

1    neurological Listings explain that a "[traumatic brain injury] may result in neurological

2    and mental impairments with a wide variety of symptoms and signs." 20 CFR pt. 404,

3    subpt P, app. 1, Listing 11.00(F).  Dr. Rasmussen, a licensed psychologist, is an

4    acceptable medical source to establish a mental impairment.  20 CFR § 416.913. For this

5    reason, Dr. Rasmussen was qualified to evaluate the residuals effects of plaintiff's brain

6    injury on his mental functioning.

7            Plaintiff's next argument, that Dr. Rasmussen's report indicates that Dr.

8    Rasmussen failed to consider the impact of plaintiff's brain injury on his functioning,

9    thereby demonstrating that she was not qualified to assess the limitations of his brain

10   injury, is without merit.  See Dkt. No. 15, p. 5-6, 11-12 (arguing that Dr. Rasmussen

11   failed to consider the objective evidence that plaintiff suffered brain volume loss as a

12   result of his 2006 trauma (*citing* head computed tomography ("CT") scans at Tr. 354,

13   387, 410, 472, 502, 549, 686, 783, which documented stable old left temporal and frontal

14   encephalomalacia)).  Although Dr. Rasmussen did not specifically reference the results of

15   plaintiff's head CT scans, Dr. Rasmussen was aware of plaintiff's 2006 head trauma.  In

16   her report, Dr. Rasmussen wrote:

17
18           [Plaintiff] reported his medical history includes sustaining a head injury in
             2006, requiring hospitalization for approximately three weeks.  This history
19           is also documented in the records accompanying this referral.  [Plaintiff]
             reported that he has experienced seizures since his injury in 2006, which is
20           also documented in the accompanying records.

21

22

23

24

Tr. 901.  These notes indicate that Dr. Rasmussen considered the impact of both

plaintiff's 2006 head injury as well as his seizure disorder in her assessment of plaintiff's

mental impairments and functional limitations. *Id.*; *see also* Tr. 902.

B. Whether the ALJ's duty to supplement the record was triggered by Dr.

Rasmussen's report

Plaintiff also argues that the ALJ erred by failing to order a second CE to

supplement the record regarding plaintiff's memory deficits and to assess whether the

testing administered by Dr. Rasmussen was appropriate to evaluate the residuals of

plaintiff's brain injury.  Dkt. No. 15, pp. 5-13.  The ALJ "has an independent 'duty to

fully and fairly develop the record.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown

v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even

when the claimant is represented by counsel." *Brown*, 713 F.2d at 443 (*citing Driggins v.

Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).  However, the ALJ's duty to supplement the

record is triggered only if there is ambiguous evidence or if the record is inadequate to

allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60

(9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150 (*citing Smolen,* 80 F.3d at 1288 (other

citation omitted)).

As in *Mayes*, the record before the ALJ was neither ambiguous nor inadequate to

allow for proper evaluation of the evidence.  *Id.* at 460.  The objective psychological

testing conducted by Dr. Rasmussen showed that plaintiff had no significant memory

impairment (Tr. 901-02).  Unlike the ALJ in *Tonapetyan*, where the medical expert used

1  phrases such as "confusing", found it "difficult to say" whether the medical record was

2  complete enough for the ALJ to reach a conclusion, and resisted reaching a conclusion

3  regarding the claimant's diagnosis, the ALJ here did not rely on medical testimony that

4  was equivocal.  *See Tonapetyan*, 242 F.3d at 1150.

5        Dr. Rasmussen's findings were clear.  Despite plaintiff's complaints of memory

6  difficulties and a reported history of "amnesia" (Tr. 900), Dr. Rasmussen concluded,

7  based on objective measures—including a mental status examination ("MSE"), Trail

8  Making Test ("TMT") Parts A & B, Wechsler Memory Scale-Third Edition ("WMS-

9  III"), and Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III")— that plaintiff

10 had no significant memory impairment (Tr. 901-02).  Dr. Rasmussen opined, based on

11 plaintiff's reports that he had used marijuana at least three times a day for the past several

12 years (Tr. 900), that plaintiff's perceived forgetfulness and mood instability was likely

13 related to substance use (Tr. 902).  These findings rendered the record adequate for

14 proper evaluation of the evidence regarding plaintiff's memory difficulties.

15       Plaintiff also argues that the ALJ should have given more weight to the opinion of

16 neurologist Laura Lyman, M.D., that "[plaintiff] does have significant deficits in short-

17 term memory, which are likely the result of his previous head trauma as well as

18 uncontrolled partial epilepsy."  Dkt. No. 15, p. 12 (*citing* Tr. 23-24, 878; accord Tr. 131).

19 As the ALJ pointed out, other than a general assertion of memory deficit, Dr. Lyman did

20 not specify plaintiff's memory limitations (Tr. 23-24 (*citing* Tr. 131)).  Nor did Dr.

21 Lyman conduct any objective memory testing (Tr. 23-24).  For these reasons, the ALJ

22 gave more weight to Dr. Rasmussen's findings that plaintiff's perceived memory

limitations were likely attributable to substance abuse (Tr. 23-24).  Although Dr.

Rasmussen's findings conflicted with the opinion of Dr. Lyman regarding plaintiff's

memory difficulties, neither doctor's opinion was ambiguous.

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Determining whether or

not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts

"falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

603 (9th Cir. 1999)).   If the medical evidence in the record is not conclusive, sole

responsibility for resolving conflicting testimony and questions of credibility lies with the

ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v.

Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145,

150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible

to more than one rational interpretation," including one that supports the decision of the

Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*,

278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601

The ALJ's resolution of these conflicting medical opinions was reasonable and

was supported by substantial evidence.  *See Magallanes*, 881 F.2d at 750 (*quoting Davis*,

868 F.2d at 325-26; *see also Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.

1996)(holding that if a treating physician's opinion is contradicted, that opinion can be

rejected "for specific and legitimate reasons that are supported by substantial evidence in the record."). Because the record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence, the ALJ's duty to further supplement the record regarding plaintiff's memory deficits was not triggered. *See Mayes*, 276 F.3d at 459-60 (*citing Tonapetyan*, 242 F.3d at 1150).

###### (2)    Did the ALJ err in rejecting the lay witness statements because of secondary gain motivation?

Plaintiff also argues that the ALJ erred in rejecting the lay witness statements of his mother and girlfriend because they had a secondary gain motive in the successful outcome of plaintiff's disability application. Dkt. No. 15, p 13-14 (citing Tr. 23). The ALJ offered multiple reasons to reject the testimony of plaintiff's mother and girlfriend, including inconsistencies with the medical evidence (Tr. 23). It is notable that plaintiff takes issue only with the ALJ's use of secondary gain motivation to reject this testimony.

An ALJ may properly discredit lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Bayliss v. Barnhart*, 427 F.3d 1244. 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis,* 236 F.3d at 511). Even if the ALJ's use of secondary gain to reject the lay witness testimony was an error, the other reasons offered by the ALJ were germane and were supported by substantial evidence in the record. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (finding that an ALJ may properly disregard lay testimony by giving reasons germane to each witness); *see*

*also Tonapetyan*, 242 F.3d at 1148 (finding that even if some of the ALJ's reasons were incorrect, substantial evidence remained to reject the claimant's testimony).  The ALJ's reliance on secondary gain motivation to reject the lay witness testimony was harmless in light of the other reasons given for rejecting this testimony.  *See Molina v. Astrue*, 674 F.3d 1104, 1117-22 (9th Cir. 2012) (finding legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion). For these reasons, the undersigned recommends that the ALJ's rejection of the lay witness testimony be affirmed.

CONCLUSION

The ALJ properly executed his duty to develop the record regarding plaintiff's impairments and properly rejected the lay witness testimony of plaintiff's mother and girlfriend.  Based on these reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

*//*

1   Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2   matter for consideration on May 30**,** 2014, as noted in the caption.

3      Dated this 9th day of May, 2014.

4

5

6                                               J. Richard Creatura
                                                United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24